**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD P. BUTKO and<br>LORRAINE E. BUTKO, | ) ) ) | |
| | ) | 2:21-cv-150-NR |
| Appellants, | ) ) | |
| v. | ) ) | |
| RONALD A. CICCOZZI, | ) ) | |
| Appellee, | ) ) ) | |

## <u>OPINION</u>

This is an appeal from an order of the bankruptcy court dated July 1, 2020, granting Appellee Ronald Ciccozzi relief from the mandatory stay in the bankruptcy proceedings filed by Appellants Richard and Lorraine Butko.  Mr. Ciccozzi sought relief so that he could foreclose on a residence that he owns and rents to the Butkos under a land installment agreement.  The bankruptcy court found that "cause" existed for relief from stay because the Butkos defaulted under the parties' agreement and had no remaining cure rights.

The Butkos now raise several issues on appeal.  This Court, however, cannot address the merits of those issues because they are all barred by res judicata.  The Butkos litigated (or had a full and fair opportunity to litigate) all their issues from a judgment entered by the bankruptcy court against them in late 2018.  They never appealed that judgment and now res judicata prevents them from filing a collateral attack to re-litigate it.  As a result, the Court finds that the bankruptcy court correctly granted Mr. Ciccozzi relief from stay and will affirm the July 1, 2020, order.

## BACKGROUND

### I.    The parties' original agreements.

The bankruptcy court accurately observed that this "acrimonious dispute" has a "tortured history." *In re Butko*, 624 B.R. 338, 344 (Bankr. W.D. Pa. 2021) ("*Butko III*"). That tortured history begins in December 2009, when the Butkos entered into a lease with a purchase option with Mr. Ciccozzi and his late wife, Joan, for a house located at 120 Heather Drive, Monaca, Pennsylvania. That option allowed the Butkos to acquire title to the house once they paid the option price of $200,000.

In what would be a sign of things to come, that agreement would not be completed. In December 2014, the parties executed a second lease with option to purchase that, among other things, terminated the 2009 agreement and released any related rights. *Id.* at 344. This new lease called for a monthly rental payment and an eventual option to purchase for a lump sum on a date certain. *Id.* Unfortunately, before that could happen, the Butkos defaulted on their rental-payment obligation, prompting them to seek bankruptcy protection. *Id.*

### II.   The 2016 bankruptcy.

On October 1, 2016, the Butkos filed a chapter 13 petition for bankruptcy. *Butko III,* 624 B.R. at 344. Mr. Ciccozzi, for his part, filed a motion for stay relief, claiming that the Butkos had no more than a limited possessory interest in the house because of their earlier default. *Id.* The Butkos opposed that motion, arguing that the "lease" for the house was not a "true lease," but, rather, was a disguised financing agreement in the form of an installment land contract governed by a Pennsylvania

law known as "Act 6."[1]  *Id.* at 344-45.  The bankruptcy court agreed with Mr. Ciccozzi because the lease was terminable at will.  *Id.* at 345.  But the court denied stay relief because the cure period in the lease had not yet expired before the petition date.  *See In re Butko*, 584 B.R. 97, 109-10 (Bankr. W.D. Pa. 2018) ("*Butko I*").

## III.   The settlement agreement.

After some procedural maneuvering, the bankruptcy court steered the parties toward a mediation before the Honorable Judith K. Fitzgerald, a former chief judge of the bankruptcy court.  *Butko III*, 624 B.R. at 345.  This mediation was ultimately successful and led to an agreement that gave the Butkos another chance to complete the sale of the house.  ECF 8-1.  The settlement agreement called for a new round of monthly payments that would apply to a new, increased purchase price.  *Id.*  And unlike the lease, the Butkos would receive full credit for each monthly payment until the final balance was paid.  *Id.*  At that point, the deed would be released to them from escrow.  *Id.*

---

[1] Act 6 is protective statute designed to "provide residential homeowners notice and an opportunity to cure default prior to foreclosure."  *JP Morgan Chase Bank N.A. v. Taggert*, 203 A.3d 187, 196 (Pa. 2019).  The text of the cure provision in Act 6 states:

> Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

41 Pa. Stat. Ann. § 403(a).

The settlement agreement also contained strict default provisions. *Id.* at ¶¶ 12-19. The Butkos were provided a tight ten-day cure period upon a payment default. *Id.* at ¶ 12. Mr. Ciccozzi did not have to notify the Butkos of any nonpayment. *Id.* at ¶ 13. If a default was not timely cured, "then all rights that [the] Butkos may have in the Property shall finally and permanently terminate" and they "will have 30 days from the 17th day of the calendar month to remove voluntarily from the Property." *Id.* at ¶ 15. And in the event of an uncured default, Mr. Ciccozzi would receive stay relief upon an affidavit of default. *Id.* at ¶ 18. The bankruptcy court would also be authorized, at that point, to enter a judgment for possession in favor of Mr. Ciccozzi in an agreed-upon form attached to the settlement agreement. *Id.* at ¶ 17.

In September 2017, the parties presented the settlement agreement to the bankruptcy court for approval under Bankruptcy Rule 9019. *Butko III*, 624 B.R. at 346. At the hearing on the settlement agreement, the Butkos were fully aware of the serious repercussions of a future default. *Id.* Despite concerns over the harsh nature of the default provisions, the bankruptcy court approved the settlement agreement, subject to certain modifications. *Id.* at 346-47.

## IV. The first alleged default and the issuance of *Butko I.*

The Butkos defaulted again. About two months later, Mr. Ciccozzi filed an affidavit of default and requested enforcement of the forfeiture provisions. *Butko III*, 624 B.R. at 347. The Butkos tried to block Mr. Ciccozzi's requested relief by arguing that the settlement agreement was an installment land contract subject to Act 6—meaning that they were entitled to an unwaivable right to a statutory notice of

default and 30-day cure period. *Id.* Essentially, the Butkos sought a ruling that the Act 6 requirements still applied to the parties' relationship despite the much harsher default and cure provisions in the settlement agreement. *Id.*

Ultimately, the bankruptcy court entered an order in which it made three key findings. *See generally Butko I*, 584 B.R. 97. First, the court found that the settlement agreement was an installment land contract governed by Act 6. *Id.* at 102-04. Second, the court found that the Butkos were judicially estopped from asserting any Act 6 defenses because they had asked the court to approve the settlement agreement and bind the parties to their deal. *Id.* at 108. Third, Mr. Ciccozzi waived the default provisions by accepting late payment. *Id.* at 109-10.

In other words, the decision was a mixed bag for the parties. On the one hand, the Butkos were right about the nature of the settlement agreement being an installment land contract and the ultimate relief was in their favor. On the other hand, the court found that they would be judicially estopped from asserting Act 6 defenses going forward. Given this outcome, neither party appealed the ruling. *Butko III*, 624 B.R. at 350.

## V.     The judgment for possession.

The next stage of the proceedings is the most critical for purposes of the present appeal. The Butkos defaulted again under the settlement agreement. In September 2018, Mr. Ciccozzi filed another affidavit of default. *Butko III*, 624 B.R. at 351. In response, the bankruptcy court granted Mr. Ciccozzi relief from stay in accordance with the settlement agreement. Case No. 2:16-bk-23695, ECF 255. The Butkos

sought reconsideration of that order based, in part, on an Act 6 defense.  Case No. 2:16-bk-23695, ECF 257.  In making this argument, the Butkos contended that the bankruptcy court's earlier judicial estoppel ruling was "dicta."  *Butko III*, 624 B.R. at 352.  The bankruptcy court denied the Butkos' request for reconsideration.  Case No. 2:16-bk-23695, ECF 267.

With reconsideration denied, the parties made a flurry of oral motions.  For his part, Mr. Ciccozzi requested that the bankruptcy court enter a judgment for possession as contemplated by the settlement agreement.  *Butko III*, 624 B.R. at 354-55.  At that point, the Butkos questioned the bankruptcy court's subject-matter jurisdiction and authority to enter the requested judgment for possession.  Case No. 2:16-bk-23695, ECF 267.  The court ordered supplemental briefing from the parties on this issue.  *Id.*  In their brief, the Butkos conceded that the bankruptcy court had jurisdiction to enter judgment, but argued that the bankruptcy court should abstain from all matters decided since *Butko I*, so that a Pennsylvania state court could determine whether the Butkos' Act 6 defenses were valid under state law.  Case No. 2:16-bk-23695, ECF 272.

After briefing, the bankruptcy court found it had jurisdiction and entered a judgment for possession in favor of Mr. Ciccozzi on December 4, 2018.  Case No. 16-23695, ECF 273 and 274.  Importantly, the Butkos elected not to appeal that entry of judgment for possession.  *Butko III*, 624 B.R. at 355.

## VI.     The state-court action.

Soon after the bankruptcy court entered the judgment for possession, the chapter 13 trustee moved to dismiss the Butkos' bankruptcy case. *Butko III*, 624 B.R. at 355-56.  The Butkos didn't oppose the motion, and the bankruptcy court dismissed the chapter 13 case without prejudice on March 4, 2019. *Id.* at 356.

In the meantime, the Butkos filed a declaratory-judgment action in the Court of Common Pleas of Beaver County, seeking to confirm that Mr. Ciccozzi was required to comply with Act 6 requirements before executing on the judgment for possession. Case No. 2:16-bk-23695, ECF 286-1.  The state court directed Mr. Ciccozzi to "show cause how this Court…could possibly enforce the [judgment for possession] without running afoul of Act 6[.]"  Case No. 2:20-bk-21255, ECF 56-3.  After a review of the record and a pretrial conference, the state court dismissed the case.   ECF 8-3.   The state court held that the Butkos were barred from challenging the bankruptcy court's judicial estoppel ruling because of res judicata. *Id.* at pp. 2-3.

## VII.     The second bankruptcy, and the issuance of *Butko II*.

After their defeat in state court, the Butkos filed a second chapter 13 bankruptcy petition on April 13, 2020. *Butko III*, 624 B.R. at 357.  Mr. Ciccozzi filed a motion for relief from stay based on the default provisions of the settlement agreement and his lack of adequate protection. *Id.*  The Butkos opposed this motion, arguing that their continued possessory interest in the house was entitled to protection while they sought to cure the default under the settlement agreement through a chapter 13 plan. *Id.*  Concurrent with their response, the Butkos filed a

chapter 13 plan that contemplated paying all creditors (including Mr. Ciccozzi), in full, from a sale of the house by May 31, 2021.  *Id.* at 358.

On July 1, 2020, the bankruptcy court issued *Butko II.  In re Butko*, 617 B.R. 532 (Bankr. W.D. Pa. 2020) ("*Butko II*").  In that decision, the court held that relief from stay was warranted because the Butkos no longer had any cure rights under applicable non-bankruptcy law.  *Id.* at 534.  That's because the court found that the judgment for possession was a final order that terminated the Butkos' equitable interest in the property.  *Id.* at 536.  That left the Butkos with just a "bare possessory interest," which could not "sustain the protections of the automatic stay."  *Id.* (cleaned up).

## VIII.  Reconsideration and appeal.

In response to this setback, the Butkos filed a motion for reconsideration of *Butko II.  Butko III*, 624 B.R. at 359.  The Butkos argued that the court had "overlooked" two important issues: (1) that the judgment for possession is void because Mr. Ciccozzi failed to give them an Act 6 notice; and (2) even if the judgment for possession is not void, it is a "confessed judgment" and not a final order until "conformed" under Act 6.  *Id.*  Either way, the Butkos argued that the bankruptcy court must vacate the order granting Mr. Ciccozzi stay relief to avoid "manifest injustice," particularly given the bankruptcy court's alleged errors, the importance of Act 6 protections, their impending loss of equity, and Mr. Ciccozzi's undeserved windfall.  *Id.* at 360.

Following extensive briefing on a show-cause order and a full hearing, the bankruptcy court denied the Butkos's motion. *See generally id.*

## IX. Order on appeal.

On February 2, 2021, the Butkos filed a notice of appeal to this Court. ECF 1. The order now on appeal is the bankruptcy court's July 1, 2020, order in *Butko II*, which found that cause exists to grant Mr. Ciccozzi relief from stay. *Id.*

Because of an imminent eviction from the property, this Court granted a limited stay of the bankruptcy court's order, to allow the parties to brief this appeal on an expedited basis. ECF 12.

The parties have completed briefing; the Court heard oral argument; and the appeal is ready for disposition.

### JURISDICTION & STANDARD OF REVIEW

This Court has appellate jurisdiction under 28 U.S.C. §§ 158(a) and 1334. *See, e.g.*, *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court[.]"); *In re Connors*, 497 F.3d 314, 318 (3d Cir. 2007) ("The District Court had jurisdiction, pursuant to 28 U.S.C. § 158(a), over Conners's appeal from the Bankruptcy Court's order lifting the automatic stay.") (citations omitted).

"Federal Rule of Bankruptcy Procedure 8013 provides that a reviewing court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Forever Green Athletic Fields, Inc. v. Dawson*, 514 B.R. 768, 778 (E.D. Pa. 2014) (cleaned up). This review is "governed by traditional standards of appellate review[.]" *Id.* That means that this

Court reviews a "bankruptcy court's legal determinations de novo, independent of that court and without deference to its analysis and conclusions of law." *Id.* (citing *Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). Factual findings, on the other hand, are reviewed "for clear error." *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).

### DISCUSSION & ANALYSIS

### I.   The Butkos' collateral attack on the judgment for possession is barred by res judicata.

The subject of this appeal is narrow. The Butkos are appealing the bankruptcy court's decision to grant Mr. Ciccozzi "relief from stay to pursue his rights under state law" to obtain possession of the property. *Butko II*, 617 B.R. at 536. The crux of that decision is that the bankruptcy court's prior judgment for possession in 2018 was a final order that terminated the Butkos' "equitable interest in the property" and left "them with no right to cure their default under state or federal law." *Id.* To prevail on this appeal, then, the Butkos must collaterally attack the validity of that underlying judgment.

On that score, the Butkos advance four arguments: (1) the judgment is void, and therefore a legal nullity; (2) the judgment is "confessed" under state law, and therefore not a final order entitled to res judicata effect until "conformed" under Act 6; (3) the judgment should not have been entered because it hinged on the bankruptcy court's erroneous finding that the Butkos were judicially estopped from raising Act 6 defenses; and (4) the judgment did not terminate their equitable interest in the property because only a sheriff's sale could do that. ECF 13. After careful

consideration, the Court finds that the judgment is entitled to res judicata effect, and can no longer be invalidated, regardless of whether the Butkos would have prevailed on direct appeal.  The judgment thus provided a proper basis for the bankruptcy court to grant Mr. Ciccozzi relief from stay.

### A.   Res judicata applies to the judgment for possession.

The doctrine of res judicata "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy and … promot[es] judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979).  To apply, these three prongs must be met: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).  The judgment for possession satisfies all three elements.

The Butkos do not dispute that the second and third elements are met.  Nor could they.  Regarding the second element, the parties are the same as in the prior bankruptcy proceeding that led to the judgment for possession.  As for the third element, the Third Circuit has instructed courts to "take a 'broad view' of what constitutes the same cause of action."  *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) (citations omitted).  "In determining whether a subsequent case is based on the same cause of action as a prior case, we will look to whether there is an essential similarity of the underlying events giving rise to the various legal claims."  *Foster v. Denenberg*, 616 F. App'x 472, 474 (3d Cir. 2015) (cleaned up).  The Butkos' second bankruptcy case is based on the "same cause of action" as their first bankruptcy petition and concerns the very same claims, arguments, and relief as

litigated before.  Indeed, directly at issue now is Mr. Ciccozzi's request for relief from the stay so that he can pursue his right of possession of the property under state law. That is the same scenario as presented in the proceedings leading to the bankruptcy court's entry of the judgment for possession.

The only potential area of dispute is the first element—whether the judgment for possession was a "final judgment."  The Court finds that it was, and that res judicata applies.

The Butkos argue that the judgment for possession could not have terminated their "rights" to the property because the judgment for possession is a "confessed judgment" and Act 6 requires such a judgment to be "conformed" before it becomes "final."  ECF 13, pp. 22-25.  Initially, the Butkos may be correct about how confessed judgments are treated generally under Act 6.  Under Act 6, a confessed judgment is not final.  After it is entered, a creditor must file a new action in state court to execute on a confessed judgment; as part of this new action, a debtor can essentially raise any defense they so desire.  41 Pa. Stat. Ann. § 407.  Considering this unique procedure, at least one court has held that a confessed judgment subject to Act 6 is not final for purposes of res judicata.  *See In re Olick*, 221 B.R. 146, 151 (Bankr. E.D. Pa. 1998) ("Accordingly, the doctrine of merger cannot apply to a confessed judgment because, due to section 407 of Act 6, a confessed judgment is not a final judgment.  Merger is a rule of res judicata which holds that all of a plaintiff's claims are merged into a plaintiff's judgment at the end of a legal proceeding thereby preventing the plaintiff

from ever again being able to bring an action based on the same claims.") (citations omitted).

Thus, a critical question is whether the judgment for possession entered by the bankruptcy court was a "confessed judgment." After a careful review of the relevant agreement, procedural history, and Pennsylvania law, the Court finds that the judgment for possession here was ***not*** a confessed judgment. As a result, it was final upon entry.

"Judgment by confession is a product of state law, having no analog in the federal rules." *F.D.I.C. v. Deglau*, 207 F.3d 153, 159 (3d Cir. 2000) (cleaned up). As a result, the practice is governed by the Pennsylvania Rules of Civil Procedure. *See* Pa R. Civ. P. 2950-2961, 2970-2976. "The confession of judgment, or cognovit, is an ancient legal device by which a debtor consents in advance to the holder's obtaining a judgment without notice or hearing and usually with the appearance, on the debtor's behalf, of an attorney designated by the holder." 11 Standard Pennsylvania Practice 2d § 67:11. "The creditor or its attorney simply … apply to the court for judgment against the debtor in default without requiring or permitting the debtor or guarantors to respond at that juncture." *Silverman v. Eastrich Multiple Inv'r Fund, L.P.*, 51 F.3d 28, 32 (3d Cir. 1995). This is typically accomplished through the filing of a warrant of attorney to confess judgment that is "self-sustaining, in writing, and … signed by the person to be bound by it." 11 Standard Pennsylvania Practice 2d § 67:26. Then, a nonjudicial officer "enter[s] judgment in conformity with the

confession" (Pa. R. Civ. P. 2956) that enjoys "all the qualities of a judgment on a verdict" (*Kostenbader v. Kuebler*, 48 A. 972, 972 (Pa. 1901)).

In the "normal" case, if a dispute arises as to whether a judgment is confessed, the debtor typically argues that it is not confessed, and then the court strictly construes the language in the underlying agreement purportedly authorizing the confessed judgment, "with any ambiguities resolved against the party in whose favor the warrant is given." 11 Standard Pennsylvania Practice 2d § 67:23. That is necessary because a "judgment by confession is not to be foisted upon anyone by implication or by a nonspecific reference." *Vincler v. Vincler*, 583 A.2d 4, 5 (Pa. Super. Ct. 1990) (citation omitted).

What makes this case odd is that the Butkos' argument flips the typical scenario on its head. That is, the Butkos, as debtors, are arguing that the default provisions in the settlement agreement should be liberally construed ***against*** them by authorizing the entry of a confessed judgment in the form of the judgment for possession. But applying the appropriate standard of review, the language of the settlement agreement and the proceedings leading up to the bankruptcy court's entry of the judgment for possession make clear that the judgment for possession is not "confessed" for at least three reasons.

First, to state the obvious, this is not state court. As noted above, the entire concept of a confessed judgment is a creature of state law. And under state law, there are very specific forms and procedural steps that render a judgment a "confessed judgment." The 2018 judgment for possession, however, was a creature of bankruptcy

proceedings.  It was authorized by a settlement agreement that was part of a bankruptcy-court mediation and that was approved by the bankruptcy court.  The bankruptcy court, not a state court, eventually entered judgment.  And none of the ordinary forms or procedures were followed.  In other words, the normal hallmarks of a confessed judgment were not present, which is evidence that the judgment here was something other than a confessed judgment.

Second, the settlement agreement lacks the standard clauses authorizing a confession of judgment, such as a confession-of-judgment provision or a "warrant of attorney" clause.  While the Court is mindful not to put form over substance, under Pennsylvania law, the lack of these standard clauses is also evidence that the parties did not intend the settlement agreement to authorize a confessed judgment.  Instead, the settlement agreement had provisions that authorized the judgment for possession to be entered, so that Mr. Ciccozzi could potentially have it transferred to state court or the U.S. Marshal to evict the Butkos.  ECF 8-1, ¶ 17.  These provisions are not analogous to the standard confession clauses, which provide for a warrant of authority, a conspicuous disclaimer of rights, and process for the creditor to simply file a form with the state-court prothononotary.  Indeed, in the more ordinary scenario of a debtor seeking to set aside a confessed judgment, a court would construe the lack of any express confession or warrant provisions as not authorizing a confessed judgment.  11 Standard Pennsylvania Practice 2d § 67:23 ("[A] written lease or contract that authorizes a party to confess judgment must be strictly construed.").

Third, as further evidence of the parties' intent, the key provisions of the settlement agreement contemplate additional judicial involvement before the judgment could be entered—which would be directly at odds with a confessed judgment. Before Mr. Ciccozzi could obtain a judgment for possession, he first had to file an affidavit of default and move for relief from the automatic stay in the bankruptcy proceeding. ECF 8-1, ¶¶ 17-18. Once entered, though, Mr. Ciccozzi still was not done because he could only enforce the judgment through another separate process.[2] *Id.* This multi-stage process strays from the typical process to obtain a confessed judgment. There, all that is usually required is the ministerial act of an attorney filing a warrant and the underlying agreement with the state-court prothonotary. A judge is never involved. The settlement agreement's additional requirements give the judgment for possession entered here a different character.

This difference is important because, as the bankruptcy court observed, "the fundamental indicia of a judgment by confession are entry without **notice or an opportunity** to be heard[.]" *Butko III,* 624 B.R. at 376 (emphasis added). That was not the case here—the Butkos had notice that the judgment for possession would be entered and an opportunity (and incentive, considering they faced the potential loss of their home) to raise their arguments prior to its entry. And, as is clear from the record, the Butkos did, in fact, raise challenges to the judgment for possession before it was entered. *See Butko III*, 624 B.R. at 352-56.

---

[2] This separate process was not the separate Act 6-type original action, which would ordinarily occur upon entry of a confessed judgment. Rather, it was a transfer to a state court or U.S. Marshal to assist in eviction.

For these reasons, the Butkos' argument over the nature of the judgment does not alter the Court's conclusion that the judgment for possession is a "final judgment" and should be afforded res judicata effect.

**B.     The Butkos' arguments on appeal are barred by res judicata.**

Because the judgment for possession is entitled to res judicata effect, that means, as a consequence, the Butkos are barred from not only bringing "claims that were brought in [the] previous action, but also claims that could have been brought." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (cleaned up).   As discussed below, all the remaining issues the Butkos raise in this appeal were either litigated or could have been litigated in the prior proceedings.   They are therefore barred.

> **1.     The Butkos are barred from arguing that the bankruptcy court lacked subject-matter jurisdiction to enter the judgment for possession.**

To invalidate the judgment for possession, the Butkos argue that it is void because the bankruptcy court did not have subject-matter jurisdiction to enter it. ECF 13, pp. 12-16.    Specifically, they argue that Act 6, which applies to the settlement agreement, is jurisdictional.  If correct, the consequence would be that Act 6 cure rights must apply (but were not applied), and so the bankruptcy court's entry of judgment was improper.  Even if the Butkos were correct and the bankruptcy court

lacked jurisdiction to enter the judgment in 2018,[3] this jurisdictional argument is barred by principles of res judicata.

To begin with, there is a misconception that subject-matter jurisdiction may be raised at **any** time. That is not quite right. During a case, certainly, subject-matter jurisdiction may be raised and considered at any time. But res judicata bars litigants from collaterally attacking subject-matter jurisdiction in a **prior** case.

As the bankruptcy court found, the Butkos are essentially making the equivalent of a Rule 60 motion, to attack the validity of the prior judgment for possession. *Butko III*, 624 B.R. at 368. "Rule 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void." *In re Prosser*, 574 F. App'x 82, 83 (3d Cir. 2014) (cleaned up). A void judgment "is one so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). "The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *Id.* A lack of subject-matter jurisdiction makes that list, but "only where there is a 'total want of jurisdiction' or 'in the rare instance of a clear usurpation of power.'" *In re Prosser*, 574 F. App'x at 83 (quoting *Marshall v. Bd of Educ.*, 575 F.2d 417, 422 n. 19 (3d Cir. 1978)). And neither condition is met where subject-matter jurisdiction was "specifically addressed" by the court. *See id.* at 84 (cleaned up). That's because "it has long been the rule that principles of res judicata

---

[3] The parties debate whether Act 6 is "jurisdictional" or "procedural." This Court, however, need not decide this issue. Even if Act 6 is jurisdictional, the Butkos are barred by res judicata from raising this argument now.

apply to jurisdictional determinations—both subject matter and personal." *Id.* (citation omitted); *see also Marshall*, 575 F.2d at 422 (finding no usurpation of authority when the parties had appeared and litigated subject-matter jurisdiction).

It is undisputed that the bankruptcy court addressed its subject-matter jurisdiction before entering the judgment for possession. After the bankruptcy court granted Mr. Ciccozzi relief from stay in the Butkos' first bankruptcy in September 2018, the Butkos moved for reconsideration. Case No. 2:16-bk-23695, ECF 257. The bankruptcy court held a hearing. Case No. 2:16-bk-23695, ECF 267. After that hearing, the bankruptcy court ordered the parties to file supplemental briefing on the specific issue of whether the court had subject-matter jurisdiction and authority to enter the proposed judgment for possession. *Id.* at p. 2. The Butkos filed a brief, as instructed. *See* Case No. 2:16-bk-23695, ECF 272. In their brief, the Butkos conceded that the bankruptcy court had jurisdiction, but argued that the bankruptcy court should abstain not only from the entry of judgment, but from all matters decided since *Butko I*, so that a Pennsylvania state court could determine whether the Butkos' Act 6 defenses were valid under state law. *See id.* at pp. 7-8. Following that briefing, the bankruptcy court noted that all parties agreed that it had subject-matter jurisdiction, and therefore found that it had subject-matter jurisdiction, declined to abstain, and entered the judgment for possession in favor of Mr. Ciccozzi. Case No. 2:16-bk-23695, ECF 273 and 274.[4]

---

[4] To be sure, the Butkos didn't appear to raise their precise argument they now advance on appeal—*i.e.,* that Act 6 is jurisdictional—but during their briefing, they took aim at the bankruptcy court's ruling in *Butko I* that judicial estoppel precluded them from raising their Act 6 defenses. *See* Case No. 2:16-bk-23695, ECF 265. They

The bankruptcy court's judicial determination of jurisdiction is "fatal" to the Butkos' argument. *In re Prosser*, 574 F. App'x at 84. "Because subject matter jurisdiction was litigated prior to the entry of the judgment, any further challenge on that ground could only have been made on direct appeal." *Id.* (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment.")); *see also Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (a federal court's determination of jurisdiction "while open to direct review, may not be assailed collaterally").

The Butkos, however, never directly appealed the judgment. Instead, they made the strategic decision to embark on an ultimately unsuccessful collateral attack in state court. Now, the time to appeal the judgment for possession has long since passed, and the Butkos are precluded from collaterally invalidating it based on the bankruptcy court's purported lack of subject-matter jurisdiction.

---

also made arguments that pertained to the non-waivability of Act 6, which touches on the jurisdictional argument they now make. *See id.* Moreover, for purposes of res judicata, it is sufficient that the Butkos could have raised their Act 6 jurisdiction argument; there is no question that they had a full and fair opportunity to do so when they were raising all of their other arguments about whether the bankruptcy court had and should exercise subject-matter jurisdiction to enter the judgment for possession. Finally, even if the Butkos could bring this argument now, they do not "identify any alleged jurisdictional error sufficiently egregious so as to render the judgment void." *In re Prosser*, 574 F. App'x at 84. Recall the standard. To collaterally attack a jurisdictional ruling, the moving party must establish a "total want of jurisdiction." *Id.* At best, it is only arguable that the bankruptcy court lacked jurisdiction based on the notice requirements of Act 6, as evidenced by the competing authority from Pennsylvania courts identified by the bankruptcy court.

### C.   The Butkos' Act 6-related arguments related to judicial estoppel and a sheriff's sale are also barred by res judicata.

The Butkos raise two additional Act 6-related arguments in this appeal.  They argue that the bankruptcy court erred in judicially estopping them from raising their Act 6 defenses.  ECF 13, pp. 16-22.  They also argue that the judgment for possession did not terminate their equitable interest in the property because there has not yet been a sheriff's sale, as required by Act 6.  *Id.* at pp. 26-28.  Both arguments are barred by res judicata, however, because they were either raised or could have been raised in the proceedings immediately preceding entry of the judgment.

That is, just before entering judgment for possession, the parties litigated the same precise issue now before this Court—whether Mr. Ciccozzi is entitled to relief from stay.  Case No. 2:16-bk-23695, ECF 255.  During that briefing, the Butkos raised their "judicial estoppel" argument and could have raised their "sheriff's sale" argument.  The Butkos are now making those same arguments in opposition to essentially the same relief the bankruptcy court previously ordered.  For example, the Butkos are arguing that Act 6 applies to the settlement agreement and provides them with cure rights up until the point of a sheriff's sale.  As such, they contend that they have more than a possessory interest in the property and thus should be entitled to an automatic stay.  But this precise argument should have been raised when Mr. Ciccozzi sought relief from stay in 2018.  The Butkos cannot keep filing bankruptcy cases to re-litigate the same issues.[5]  That the Butkos had the opportunity to raise

---

[5] Even if this Court were to consider the merits of the Butkos' "sheriff's sale" argument, the bankruptcy court was right to reject that argument.  *See Butko II*, 617 B.R. at 535.  With a land installment contract, the vendor, here Mr. Ciccozzi, retains

these arguments in the prior bankruptcy bars them from re-litigating these issues again several years later. *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("[R]es judicata bars not only claims that were brought in the previous action, but also claims that could have been brought.") (cleaned up).

## II. The bankruptcy court correctly concluded that Mr. Ciccozzi was entitled to relief from stay.

As noted above, the order at issue on appeal is the bankruptcy court's order, granting Mr. Ciccozzi relief from stay. The bankruptcy court held that because the Butkos no longer had any legal or equitable rights to the property, cause existed to grant relief from stay. *Butko II*, 617 B.R. at 536. This Court agrees. Because the Butkos' legal rights to the property were terminated by the 2018 judgment—which they are precluded from re-litigating—this Court finds that bankruptcy court correctly concluded that cause existed to grant Mr. Ciccozzi relief.

In bankruptcy law, "[t]he concept of 'cause' is broad and flexible requiring a fact intensive analysis." *In re Flabeg Solar US Corp.*, 499 B.R. 475, 482 (Bankr. W.D. Pa. 2013) (citation omitted). Any factual findings that the bankruptcy court makes under that analysis are entitled to deferential treatment under a "clear error" standard. *In re Montgomery Ward*, 326 F.3d at 387. As a factual matter, it was not a clear error for the bankruptcy court to find, based on the extensive procedural

---

legal title until completion of the contract. When there is a default, and the contract is never completed, the title simply remains in the vendor's possession. *See id.* (collecting cases). No "sale" is necessary to transfer that ownership. As a result, the Butkos argument that their interest in the property could be terminated ***only*** by sheriff's sale would mean that their interest could ***never*** be terminated, because no sheriff's sale will ever occur for the property.

history of this case, that the Butkos only have a possessory interest in the property. Nor was it legal error for the bankruptcy to find that, consistent with the weight of authority by the bankruptcy courts in this Circuit, the lack of any interest beyond possession took the Butkos outside the protections of the automatic stay. *See, e.g.*, *In re Flabeg*, 499 B.R. at 483; *In re Ramreddy, Inc.*, 440 B.R. 103, 116 (Bankr. E.D. Pa. 2009); *In re Burch*, 401 B.R. 153, 157 (Bankr. E.D. Pa. 2008); *Twin Rivers Lake Apts. Horizontal Prop. Regime, Inc. v. Wallner*, No. 05-4560, 2006 WL 2023188, at *9 (D.N.J. July 18, 2006); *In re Turner*, 326 B.R. 563, 573 (Bankr. W.D. Pa. 2005). Since all the Butkos' arguments about their legal and equitable interest in the property are now barred because of res judicata, granting Mr. Ciccozzi relief from the mandatory stay was appropriate.[6]

The Court acknowledges that the Butkos might find this result to be unfair, because it follows from their tactical mistake of pursuing a state-court attack rather than a direct appeal of the 2018 judgment for possession—which could have

---

[6] The Third Circuit has held that a bare possessory interest can trigger the automatic stay. *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 328 (3d Cir. 1990). However, the weight of the authority in this Circuit has interpreted this Third Circuit decision as requiring the debtor to at least have some colorable legal right in the property to obtain the benefit of the automatic stay. *See In re Flabeg*, 499 B.R. at 482 (compiling cases). The Butkos do not argue that their bare possessory interest is enough to maintain the automatic stay, or that the bankruptcy court erred in concluding that no further legal or equitable interest in the property constituted cause to provide relief from stay. Thus, the Butkos have waived the ability to raise such an argument now on appeal. *See, e.g., Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal.") (citation omitted); *Hackerman v. Demeza*, 576 B.R. 472, 478 (M.D. Pa. 2017) ("Accordingly, because Hackerman has waived any challenge to the denial of the motion to convert by failing to address it in his briefing, this court will not disturb the bankruptcy court's order denying this motion.").

potentially led to a different outcome.  But there "is no equitable exception to the operation of res judicata when a party fails to file an appeal." *McHale v. Kelly*, 527 F. App'x 149, 152 (3d Cir. 2013) (citation omitted).  Since the judgment for possession against the Butkos is now etched in stone, nothing can "relieve them of the consequences of [their] procedural misstep." *Id.* (citation omitted).

## CONCLUSION

For the above reasons, the bankruptcy court's order granting Mr. Ciccozzi relief from the bankruptcy stay will be **AFFIRMED**.  An appropriate order follows.

Dated this 26th day of April, 2021.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge